**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

EDWARD SANCHEZ,

                              Plaintiff,

        - v -                                              Civ. No. 9:12-CV-1646
                                                           (NAM/DJS)
HAROLD GRAHAM, *et al.*,

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

EDWARD SANCHEZ
Plaintiff, *Pro Se*
326-49th Street, No. 2
Brooklyn, New York 11220

HON. ERIC T. SCHNEIDERMAN                      ADRIENNE J. KERWIN, ESQ.
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

On November 5, 2012, *pro se* Plaintiff Edward Sanchez commenced this action, pursuant

to 42 U.S.C. § 1983, asserting claims under the Eighth Amendment arising from his conditions of

confinement at Auburn Correctional Facility and the medical care he received at Clinton

Correctional Facility.  Dkt. No. 1, Compl.  Presently before the Court is Defendants' Motion for

Summary Judgment pursuant to FED. R. CIV. P. 56.  Dkt. No. 40, Defs.' Mot. Summ. J.  Plaintiff

opposed the Motion and Defendants filed a Reply.  Dkt. Nos. 56, Pl.'s Resp.; 58, Defs.' Reply.  For

the reasons that follow, the Court recommends that Defendants' Motion be **granted in part and denied in part**.

# I. BACKGROUND

Plaintiff's Complaint asserts claims arising from his incarceration, while in the custody of the New York Department of Corrections and Community Supervision ("DOCCS"), at Auburn Correctional Facility ("Auburn") and Clinton Correctional Facility ("Clinton") from November 12, 2010 to September 2012. Compl. at ¶¶ 28-82. The Court herein summarizes the undisputed material facts.

## A. Plaintiff's Failure to File a Rule 7.1(a)(3) Statement of Material Facts

Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y.L.R. 7.1(a)(3). "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* Defendants request that the Court deem their Rule 7.1(a)(3) Statement of Material Facts admitted due to Plaintiff's failure to file an opposing statement of material facts. Defs.' Reply at pp. 3-4. However, the Second Circuit, acknowledging the court's broad discretion to determine whether to overlook a failure to comply with local rules, has held that the court may in its discretion opt to conduct a review of the entire record even where one of the parties has failed to file a 7.1 statement. *Holtz v. Rockefeller & Co., Inc.*, 258 F. 3d 62, 73 (2d Cir. 2001). Therefore, in deference to Plaintiff's *pro se* status, the Court has opted to review the entire summary judgment record.

## B. Plaintiff's Medical History

On January 21, 2004, when Plaintiff was incarcerated at Southport Correctional Facility, he was sent for a CT scan of his lumbar spine, due to persistent low back pain radiating down both legs, which was subsequent to a fall down a flight of stairs said to have occurred in 2001. Compl. at ¶¶ 14-15; Dkt. No 1-1, Pl.'s Exs. at pp. 2 & 5.[1] The CT scan revealed suspicion of a herniated disc at L5-S1. Pl.'s Exs. at. p. 2. Plaintiff was then transferred to Auburn, and his incoming health screening, conducted on February 3, 2004, indicated that he had "low back pain possible herniated disk" and further indicated that he was to be assigned to a bottom bunk. *Id.* at p. 3. Plaintiff was also provided other accommodations for his back pain at Auburn, including an extra mattress and a back brace. *Id.* at p. 4 & 6. An MRI was conducted on December 9, 2004, which indicated grade one spondylolisthesis and left posterior disc protrusion at L5-S1. *Id.* at p. 10. Plaintiff was then released from DOCCS custody, but was incarcerated again in late 2009. *See* Compl. at ¶ 28. On January 15, 2010, a "problem list" listing Plaintiff's medical complaints while in DOCCS custody was generated, which listed chronic lower back pain as late as December 18, 2009. *Id.* at ¶ 29; Pl.'s Exs. at pp. 18-19. An x-ray report prepared on February 12, 2010 indicated, *inter alia*, that Plaintiff had grade one anterolisthesis at L5-S1. Pl.'s Exs. at p. 20. An orthopedic consult was recommended, and while Plaintiff agreed to it, the consult form is notated at the top "Albany denied." *Id.* at pp. 21-22.

## C. Auburn Correctional Facility

According to the Plaintiff, he was transferred to Auburn on November 12, 2010. Compl. at ¶ 33. Plaintiff was initially assigned to a single cell. Dkt. No. 40-5, Harold Graham Decl., dated

---

[1] Citations to Plaintiff's Exhibits are to the pagination automatically assigned by the Court's Case Management Electronic Case Files ("CM/ECF") System.

Sept. 4, 2014, at ¶ 6. That same day, a "Screening and Physical Assessment for Placement in a Double Cell" form was filled out and signed by Defendant Nurse Cornall. Dkt. No. 40-13, Joshua Farrell Decl., Ex. 1.[2] The Form contained two sections: (1) a medical record screening review and (2) a physical assessment.[3] *Id.* In connection with the review of an inmate's medical records, the Form specifically asked:

> Are there any known medical indications requiring him to be placed in the bottom bunk bed? (E. G. Medically documented - back problems (through radiological or physician review). . . ).
> *Id.*

The Form is marked "no." *Id.* The second section of the Form deals with a physical assessment of the inmate and inquires whether such examination disclosed medical indications requiring the inmate to be placed in the bottom bunk. *Id.* The Form was again marked "no." *Id.* Plaintiff asserts in the Complaint that Defendant Cornall never conducted a physical assessment of him. Compl. at ¶ 35. In addition to the Screening and Physical Assessment Form, Defendant Cornall also completed a "Health Screening for Intrasystem Transfer" form on November 12, 2010. Dkt. No. 40-9, Noreen Cornall Decl., dated Sept. 26, 2014, at ¶ 6; Farrell Decl., Ex. 8. Defendant Cornall is unable to recall examining Plaintiff, but believes that he did not mention any back problems at the screening because it was her practice to record all of an inmate's health complaints on the Health Screening form. Cornall Decl. at ¶ 6. She further notes that on the Health Screening form Plaintiff

---

[2] The Exhibits to the Farrell Declaration were filed at a separate docket entry because they contain medical records. *See* Dkt. No. 41.

[3] Under DOCCS regulations, the selection of an inmate for double cell housing requires an assessment of certain eligibility, suitability, and compatibility criteria. N.Y. COMP. CODES R. & REGS. tit. 7, § 1701.5(a). As part of the assessment, there must be a medical screening, which comprises a review of the inmate's medical records and a physical assessment. *Id.* § 1701.5(c)(6). The form that facility health staff must use for such medical screening is contained at 7 NYCRR § 1701.9. *Id.* § 1701.9. The Court shall refer to such form as the "Screening and Physical Assessment Form."

was noted to "ambulate without assistance." *Id.*; Farrell Decl., Ex. 8.

On this same date, a counselor in Auburn's Guidance Unit began to complete a form[4] (the "Double Cell Information Sheet") to review Plaintiff's status for double celling; at that time, all Auburn inmates were reviewed for double celling. Graham Decl. at ¶ 9; Farrell Decl., Ex. 2. The counselor completed the "Suitability" and "Compatibility" sections of the Information Sheet, and then forwarded the Information Sheet to Health Services for completion of the "Health Services Review Results." Graham Decl. at ¶ 9. In completing the "Health Services Review Results," a nurse would review the inmate's Medical Problem List and determine whether the inmate was suitable for double bunking consistent with DOCCS Policy No. 1.49.[5] Dkt. No. 40-8, Mary Coryer Decl., dated Sept. 8, 2014, at ¶ 11. The nurse who completed Plaintiff's "Health Services Review Results" approved Plaintiff for double celling and indicated that he did not need a bottom bunk. Farrell Decl., Ex. 2. Defendant Nurse Cornall denies that she was the nurse who completed the "Health Services Review Results." Cornall Decl. at ¶¶ 8-9. As explained by Defendant Nurse Coryer, although Plaintiff's Medical Problem List indicated "Back Pain with Radiating Symptoms," the associated code did not require bottom bunk placement under Policy No. 1.49; bottom bunk placement was only required if the code was "SRID." Coryer Decl. at ¶ 11; Farrell Decl., Ex. 6. On November 19, 2010, a captain at Auburn, who is not a defendant to this action, approved Plaintiff for double celling. Graham Decl. at ¶ 7; Farrell Decl., Ex. 2.

---

[4] This form is the "double-cell information sheet," which, together with the Screening and Physical Assessment Form, is contained in 7 NYCRR § 1701.9. N.Y. COMP. CODES R. & REGS. tit. 7, §§ 1701.5(e) & 1701.9. The Court shall refer to such form as the "Double Cell Information Sheet."

[5] Defendants have provided the Court with a copy of DOCCS Policy No. 1.49; however, the verison provided is dated June 4, 2014, after the events of this action. Farrell Decl., Ex. 5. Nonetheless, the Policy states that placement in a bottom bunk may be warranted where the inmate has "[d]ocumented back problems through physician review of history and medical records (e.g., radiological or surgical) that significantly limits climbing." *Id.*

Plaintiff was not assigned to a double cell until March 2, 2011. Graham Decl. at ¶ 11. The decision to assign Plaintiff to a specific double cell was made by the Movement Control Officer who was on duty that date. *Id.* The Movement Control Officer is supervised by the Lieutenant Watch Commander. *Id.* at ¶ 16. Defendant Graham, the Superintendent of Auburn, explains that the decision to assign an inmate to a specific double cell is made chronologically; that is, inmates who have been housed at Auburn longer are assigned to a double cell before inmates who have arrived more recently. *Id.* at ¶ 12. Plaintiff was assigned to a top bunk. Compl. at ¶ 41. Plaintiff claims that placement in the top bunk caused him "extreme back pains" because there was no ladder and he had to climb and jump in order to reach his bed. *Id.* at ¶ 43.

Plaintiff sent letters requesting to be removed from the top bunk and his double cell assignment to Defendants Coryer and Graham on March 7, 16, and 24, 2011. *Id.* at ¶¶ 43-45; Farrell Decl., Exs. 3 & 7. On April 5, 2011, Plaintiff filed a grievance, assigned No. AUB-58370-11, which complained that he had been assigned to a top bunk without consideration of his chronic lower back pain. Farrell Decl., Ex. 4. On April 7, 2011, Plaintiff alleges that he fell while trying to reach the top bunk, aggravating his back injury. *See* Compl. at ¶¶ 48-49. Plaintiff was taken to sick call, where he was given Motrin and ordered to have one day of bed rest. Pl.'s Exs. at pp. 42-43. Plaintiff returned to sick call on April 8, 2011, and was excused from programs and work for three more days. *Id.* at pp. 44-45.

On April 12, 2011, Defendant Coryer responded to Plaintiff's complaint letters. Coryer Decl. at ¶ 18. Reviewing Plaintiff's Medical Problem List and current medical chart, Defendant Coryer determined that Plaintiff did not meet the criteria for bottom bunk placement under DOCCS Policy No. 1.49 and advised Plaintiff as such. *Id.* Defendant Coryer directed Plaintiff to "go to sick

call to address concerns." Farrel Decl., Ex. 7. She explains that she intended Plaintiff to attend sick call to have a physical examination to determine if his back problems qualified him for a bottom bunk. Coryer Decl. at ¶ 18. However, on April 16, 2011, Plaintiff was removed from his double cell assignment. Graham Decl. at ¶ 24. On April 22, 2011, Defendant Coryer sent another a response to Plaintiff that informed him that he did "not meet the criteria for a bottom bunk" and referred him to her earlier letter. Farrell Decl., Ex. 7.

### D. Clinton Correctional Facility

On February 10, 2012, Plaintiff was transferred to Clinton. Compl. at ¶ 70. At Clinton, Plaintiff received medical care from Defendant Dr. Kang Lee. At his first examination of Plaintiff, on February 29, 2012, Defendant Dr. Lee noted Plaintiff's high blood pressure, left shoulder injury, and degenerative back condition, and also marked that Plaintiff was fully ambulatory. Dkt. No. 40-10, Kang Lee Decl., dated Sept. 11, 2014, at ¶ 6; Farrell Decl., Ex. 9 ("Pl.'s AHR") at p. 34.[6] Plaintiff had a prescription for Neurontin at that time. Lee Decl. at ¶ 6. Reviewing Plaintiff's medical chart, and due to Plaintiff's history of heroin abuse, Dr. Lee determined that it was appropriate to treat Plaintiff with non-steroidal anti-inflammatory drugs on an as-needed basis. *Id.*

After the February 29 examination, Defendant Dr. Lee ordered an x-ray of Plaintiff's right knee and that Plaintiff be provided with a refill of his Neurontin prescription and a knee brace. *Id.* at ¶ 7. On March 22, 2012, Dr. Lee saw Plaintiff for pain in his right knee and left shoulder. *Id.*; Pl.'s AHR at p. 38. Dr. Lee prescribed Plaintiff Naprosyn for his pain symptoms and ordered a physical therapy consultation. Lee Decl. at ¶ 7. He also reviewed Plaintiff's right knee x-ray report, which indicated "partial ossification of the proximal patellar tendon near its patellar attachment site." *Id.*

---

[6] Citations to Plaintiff's AHR are to the pagination assigned by the Court's CM/ECF System.

He determined that no action was required with respect to that finding. *Id.*

On April 4, 2012, Plaintiff was approved for physical therapy for his left shoulder, and Plaintiff started his physical therapy the next day. *Id.* at ¶¶ 8-9. After sessions on April 26 and April 27, Plaintiff was noted to tolerate the physical therapy well. Farrell Decl., Ex. 11. When Plaintiff saw Dr. Lee again on April 28, 2012, he was noted to be fully ambulatory. Lee Decl. at ¶ 10; Pl.'s AHR at p. 40. Plaintiff claimed that the Naprosyn was ineffective at treating his pain. Lee Decl. at ¶ 10. On May 3, 2012, Plaintiff refused further physical therapy. *Id.* at ¶ 11. On May 18, 2012, Plaintiff refused to be examined by Dr. Lee. *Id.* at ¶ 12.

When Plaintiff next saw Defendant Dr. Lee on June 28, 2012, he continued to complain of shoulder, knee, and back pain. *Id.* at ¶ 13; Pl.'s AHR at p. 45. Dr. Lee noted that Plaintiff was fully ambulatory and not limping. Pl.'s AHR at p. 45. Dr. Lee again saw Plaintiff on August 2, 2012, for the same complaints. *Id.* at p. 47. Dr. Lee determined that it was appropriate to continue treating Plaintiff with Neurontin and Naprosyn. Lee Decl. at ¶ 14; Pl.'s AHR at p. 47. On August 28, 2012, at sick call, Plaintiff requested a referral to a pain specialist and stated that he was unable to take Naprosyn because it upset his stomach. Pl.'s AHR at p. 48. On October 11, 2012, Dr. Lee saw Plaintiff for the same complaints and requested that Plaintiff not be assigned to jobs requiring heavy lifting. Lee Decl. at ¶ 15.

### E. Plaintiff's Claims

Plaintiff's Complaint asserts Eighth Amendment medical indifference claims based on his assignment to a top bunk without regard to his back injury at Auburn against Defendants Cornall, Coryer, Graham, Dr. Kooi, and Robinson. Plaintiff also asserts an Eighth Amendment medical indifference claim against Defendant Dr. Lee based on the medical treatment he received at Clinton.

Plaintiff names Dr. Carl Koenigsmann, Deputy Commissioner and Chief Medical Officer, as a Defendant to these claims. In addition to his constitutional claims, Plaintiff asserts negligence and medical malpractice claims. Plaintiff requests monetary damages and declaratory and injunctive relief.

### F. Defendants' Motion

Defendants moved for summary judgment on October 1, 2014. Defs.' Mot. for Summ. J. Defendants seek summary judgment on the following grounds: (1) Defendants Graham, Robinson, Dr. Kooi, Coryer, and Cornall were not personally involved in the decision to assign Plaintiff to a top bunk; (2) Defendants are entitled to judgment as a matter of law on Plaintiff's deliberate medical indifference claims; (3) Defendants are entitled to qualified immunity on Plaintiff's deliberate medical indifference claims; (4) Dr. Koenigsmann was not personally involved in any of the alleged constitutional violations and Plaintiff failed to exhaust his administrative remedies on any claims against Dr. Koenigsmann; and (5) Plaintiff's declaratory and injunctive relief claims are moot, his official capacity claims are barred by the Eleventh Amendment, and his state law claims are barred by N.Y. Correction Law § 24. Dkt. No. 40-1, Defs.' Mem. of Law.

## II. DISCUSSION

### A. Summary Judgment Standard

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings,*

*Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Plaintiff's Claims Against the Auburn Defendants

The basis of Plaintiff's Eighth Amendment claim arising from the events that occurred at

Auburn is that Defendants' assignment of Plaintiff to a top bunk, in spite of his established medical condition, and in alleged contravention of the applicable DOCCS protocol, amounts to deliberate indifference to his serious medical needs and therefore violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

### 1. Personal Involvement

It is undisputed that the final decision to assign Plaintiff to a double cell was made by a non-defendant officer, and the final decision to approve Plaintiff for placement in a double cell was made by a non-defendant captain. Graham Decl. at ¶¶ 9 & 11. Accordingly, Defendants argue that Plaintiff cannot establish the personal involvement of any of the named Defendants in the decision to assign Plaintiff to a double cell. Defs.' Mem. of Law at pp. 5-9. Plaintiff alleges the liability of (1) Defendants Graham, Robinson, and Dr. Kooi for implementing a policy at Auburn of double bunking inmates without regard to medical need, failing to investigate Plaintiff's complaints, and failing adequately supervise their subordinates; (2) Defendant Coryer for failing to properly investigate and respond to his complaints; and (3) Defendant Cornall for failing to properly conduct a medical assessment of Plaintiff. *See* Compl. at ¶¶ 83-128 & 136-45.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official may not be held liable merely because he held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright*

*v. Smith*, 21 F.3d at 501) (further citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[7]

### a. Supervisory Claims

Plaintiff's allegations with respect to Defendants Graham, Robinson, and Dr. Kooi are unsupported by the record and insufficient to establish the personal involvement of these Defendants. Defendant Graham is the Superintendent of Auburn; Defendant Robinson was the

---

[7] The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) upon the categories of supervisory liability under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *See Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g., Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g., Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at *6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 F. App'x 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role, *see, e.g., D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

Deputy Superintendent of Security at Auburn during the relevant events of this action; and Defendant Dr. Kooi is the Facility Health Services Director at Auburn. Graham Decl. at ¶ 1; Dkt. Nos. 40-6, Grafton Robinson Decl., dated Sept. 4, 2014, at ¶ 1; 40-7, Pang Kooi Decl. at ¶ 1.

First, it is undisputed that none of these Defendants directly participated in the decision to assign Plaintiff to a double cell. Graham Decl. at ¶ 14; Robinson Decl. at ¶ 14; Kooi Decl. at ¶ 14. Second, while Plaintiff alleges that he sent letters complaining of his double bunking to Defendants Graham and Robinson, Compl. at ¶¶ 44 & 50, it is undisputed that neither of these Defendants personally investigated those letters, but instead referred them to subordinates. The mere receipt of, without personally investigating, a letter from an inmate is insufficient to establish personal involvement. *Johnson v. Wright*, 234 F. Supp. 2d 352, 363-64 (S.D.N.Y. 2002) (citing cases). "The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009); *see also Vega v. Artus*, 610 F. Supp. 2d 195, 199 (N.D.N.Y. 2009). Defendant Graham received letters from Plaintiff dated March 16, 2011 and April 11, 2011, which he read, but then forwarded to Defendant Coryer to investigate and answer. Graham Decl. at ¶ 22; Farrell Decl., Ex. 3. Defendant Robinson does not recall receiving the April 11, 2011 letter that Plaintiff allegedly sent to him, but states that he did not personally investigate any inmate letter complaints and would forward them to an appropriate department. Robinson Decl. at ¶ 22. Accordingly, Plaintiff's letters to Defendants Graham and Robinson are insufficient to establish those Defendants' personal involvement.

Plaintiff also alleges the personal involvement of Defendant Graham based on the appeal of his grievance to the Superintendent's office. Compl. at ¶ 86. Some courts in this Circuit have held

that a supervisor's review and denial of a grievance is sufficient to establish personal involvement. *See, e.g.*, *Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009). However, certain of those courts have held that a supervisor's denial of a grievance will only establish personal involvement where there is an ongoing constitutional violation, a position that the Court adopts here. *See id.* ("[M]any courts in this Circuit . . . have held that an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement, such that the 'supervisory official who reviews the grievance can remedy [it] directly.'" (quoting *Vega v. Artus*, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009)); *Harnett v. Barr*, 583 F. Supp. 2d 511, 524 (N.D.N.Y. 2008) ("If the official is confronted with a violation that has already occurred and is not ongoing, then the official will not be found personally responsible for failing to 'remedy' a violation."). In this case, Plaintiff was removed from his double cell assignment on April 16, 2011, eleven days after Plaintiff filed a grievance relative to his cell assignment. Graham Decl. at ¶ 24. Plaintiff did not appeal his grievance to the Superintendent's office until June 2, 2011, Farrell Decl., Ex. 15 at p. 154;[8] therefore, the alleged violation was not ongoing by the time Defendant Graham's office considered Plaintiff's grievance. Accordingly, this basis for Defendant Graham's personal involvement is also insufficient.

Plaintiff's remaining allegations against Defendants Graham, Robinson, and Dr. Kooi recite the *Colon* categories in conclusory terms and are insufficient to create personal involvement. Specifically, Plaintiff alleges that these Defendants allowed a policy in which unconstitutional practices occurred and were grossly negligent in supervising their subordinates. Compl. at ¶¶ 85, 90, 94, 97, 103, & 105. Both of these allegations are entirely unsupported. There is no evidence

---

[8] Citation is to the pagination assigned by the Court's CM/ECF System.

of a policy or custom of assigning inmates to double bunking without completing a medical assessment. Nor is there any evidence that these Defendants' supervision of their subordinates was grossly negligent, such as if they had personal knowledge of misconduct by their subordinates, either in this or other similar cases. *See Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 62 (N.D.N.Y. 2009). Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **GRANTED** as to Defendants Graham, Robinson, and Dr. Kooi and that these Defendants be **DISMISSED** from this action.

### b. Defendant Nurse Coryer

Defendant Nurse Coryer is the Nurse Administrator at Auburn. Coryer Decl. at ¶ 1. Like Defendants Graham, Robinson, and Kooi, it is undisputed that Nurse Coryer did not directly participate in the decision to assign Plaintiff to a double cell. *Id.* at ¶ 14. However, unlike those Defendants, Nurse Coryer personally investigated and responded to Plaintiff's letters complaining of his double bunking. *Id.* at ¶ 18. As stated by Defendant Graham, Nurse Coryer "was the supervisor who could investigate and respond to Plaintiff's concerns." Graham Decl. at ¶ 22. Nurse Coryer received letters from Plaintiff dated March 7, March 24, and April 11, 2011. Coryer Decl. at ¶ 18. She both forwarded those letters to the nurse assigned to Plaintiff's cell block and responded directly. *Id.* On April 12, 2011, she completed a sick call response, in which she reviewed Plaintiff's medical problem list and current medical chart, from which she determined that Plaintiff did not meet the criteria for bottom bunk placement under DOCCS Policy No. 1.49. *Id.*; Farrell Decl., Ex. 7. She advised Plaintiff to attend sick call in order to obtain a physical examination to determine whether bottom bunk placement was appropriate. Coryer Decl. at ¶ 18. Nurse Coryer referred Plaintiff to this April 12 response in a letter dated April 22, 2011. Farrell

Decl., Ex. 7.

Defendants argue that Plaintiff's letters to Nurse Coryer are insufficient to establish her personal involvement. Defs.' Mem. of Law at p. 8. However, while it is well-established that the mere receipt of a letter from an inmate is insufficient to establish personal involvement, "[p]ersonal involvement will be found . . . where a supervisory official receives and acts on a prisoner's grievance or otherwise reviews and responds to a prisoner's complaint." *Johnson v. Wright*, 234 F. Supp. 2d at 363-64; *see also Colon v. Coughlin*, (stating that a supervisory defendant may be personally involved where there is evidence that "the defendant, after being informed the violation through a report or appeal, failed to remedy the wrong"); *Pugh v. Goord*, 571 F. Supp. 2d 477, 515-16 (finding personal involvement of defendants who investigated and responded to the plaintiff's grievances and complaints); *Ramos v. Artuz*, 2001 WL 840131, at *8-10 (S.D.N.Y. July 25, 2001) (finding personal involvement of defendant who "sent plaintiff numerous letters containing some explanation or justification concerning the issues raised by plaintiff in his letters"). Thus, based on Defendant Coryer's investigation of and response to Plaintiff's letters, the Court finds that there is sufficient evidence to find that she was personally involved in the alleged constitutional deprivations.

### c. Defendant Nurse Cornall

Defendant Nurse Cornall is a nurse at Auburn. Cornall Decl. at ¶ 1. The basis of Plaintiff's claim against Defendant Cornall is that she completed Plaintiff's Screening and Physical Assessment Form, which, he claims, resulted in his assignment to a top bunk. Compl. at ¶¶ 125-27. In her screening and assessment, Defendant Cornall indicated that Plaintiff did not have any medical problems, including back problems, that would require him to be placed in a bottom bunk. Cornall

Decl. at ¶ 6. Plaintiff claims that Defendant Cornall never conducted a physical assessment of him. Compl. at ¶ 35. Notwithstanding her completion of the Screening and Physical Assessment Form, Defendant Cornall claims that she was not involved in the completion of the Double Cell Information Sheet that approved Plaintiff's placement in a double cell; she claims that a different nurse reviewed Plaintiff's medical records and signed the Double Cell Information Sheet. Cornall Decl. at ¶¶ 8-9.

Based on the current record, the review process for the placement of an inmate into double cell housing at Auburn is not entirely clear. In completing the Screening and Physical Assessment Form, Defendant Cornall was required to review Plaintiff's medical records and conduct a physical examination of Plaintiff; however, it appears that a different nurse also reviewed Plaintiff's medical records in connection with the Double Cell Information Sheet and indicated that Plaintiff did not require placement in a bottom bunk. In discussing the review of an inmate for double cell housing, Defendants suggest that the only required form is the Double Cell Information Sheet. *See* Graham Decl. at ¶ 9. Indeed, Defendants refer to the Double Cell Information Sheet as the "Approval" form. *Id.* Defendants therefore imply that the Screening and Physical Assessment completed by Defendant Cornall was not part of the review that approved Plaintiff for placement into double cell housing. *See* Defs.' Mem. of Law at pp. 10-11 (arguing that "Plaintiff's double celling was approved by an unidentified Captain upon the input of both an unknown counselor in Auburn's Guidance Unit and an unnamed nurse in Auburn's Health Screening Unit"). However, under DOCCS regulations, the Screening and Physical Assessment Form completed by Defendant Cornall was a condition precedent to Plaintiff's assignment to double cell housing. N.Y. COMP. CODES R. & REGS. tit. 7, § 1701.9. Furthermore, on a motion for summary judgment, the record must be construed in the light

most favorable to Plaintiff, as the non-moving party. Thus, the Court finds Defendant Cornall's completion of the Screening and Physical Assessment Form is sufficient to establish her personal involvement in the alleged constitutional violations.

### 2. Eighth Amendment Deliberate Medical Indifference

Having recommended dismissal of Defendants Graham, Robinson, and Dr. Kooi for a lack of personal involvement, the only remaining Defendants to this claim are Defendant Nurse Cornall for her alleged failure to properly complete the Screening and Physical Assessment Form, and Defendant Nurse Coryer for her alleged failure to reasonably investigate and respond to Plaintiff's placement in a top bunk.

### a. Legal Standard

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in the form of "unnecessary and wanton infliction of pain" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The constitutional prohibition against cruel and unusual punishment applies to the provision of medical care and inmate safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994); *see also Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y.1997) ("[P]rison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner."). To establish an Eighth Amendment deliberate medical indifference claim, an inmate must establish (1) a deprivation that is, in objective terms, "sufficiently serious," and (2) that prison officials acted with deliberate indifference to his health or safety. *See Farmer v. Brennan*, 511 U.S. at 834 .

Under the objective standard, the Second Circuit has stated that a medical need is serious if

it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citation omitted). Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individuals daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300). "Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer v. Brennan*, 511 U.S. at 835. In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway v. Coughlin*, 37 F.3d at 66. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.*

### b. Analysis

In this case, Plaintiff suffered chronic lower back pain; his medical records show that he has spondylolisthesis and posterolateral disc protrusion at L5-S1. *See* Pl.'s Exs. at p. 10. On account of his lower back pain, Plaintiff had received a bottom bunk order at other correctional facilities prior to being housed at Auburn. *See id.* at pp. 3 & 11. Furthermore, Plaintiff was removed from his top bunk at Auburn, eleven days after he filed a grievance complaining of his assignment, Compl. at ¶ 53; the current record does not reveal the reason why Plaintiff was removed from his top bunk assignment and whether it was due to a determination that Plaintiff medically required a

bottom bunk assignment. Courts generally agree that chronic back injuries are "sufficiently serious" to satisfy the objective prong of the Eighth Amendment test. *See, e.g.*, *Jones v. Smith*, 2015 WL 5750136, at *12 (N.D.N.Y. Sept. 30, 2015); *Briel v. Fields*, 2013 WL 1833248, at *3 (E.D.N.Y. May 1, 2013). Although the record demonstrates that Plaintiff's back injury had warranted a bottom bunk assignment prior to his transfer to Auburn, and Plaintiff was promptly removed from a top bunk assignment at Auburn after he filed a grievance, the Court finds that there are questions of fact as to whether Plaintiff's chronic back injury was "sufficiently serious" to satisfy the objective prong.

Next, the Court addresses whether Defendants Nurse Cornall and Nurse Coryer's alleged actions evidence deliberate indifference to Plaintiff's serious medical needs. An inmate may state an Eighth Amendment claim against correctional officials for improper placement in a top bunk, assuming that the proper subjective standard is met. *See, e.g.*, *Briel v. Fields*, 2013 WL 1833248, at *3 (finding that the plaintiff's allegations that the defendants were aware of his back condition and recommendation that he be placed in a bottom bunk, but purposely assigned him to a top bunk, stated claim under subjective prong, and collecting cases); *Perdue v. Dreyer*, 2008 WL 4826260, at *5-6 (W.D.N.Y. Nov. 5, 2008) (finding questions of fact at subjective prong where plaintiff advised defendants of his medical history of seizures and showed them a previously issued medical permit for a lower bunk, but was nevertheless placed on the top bunk, ); *but see Felix-Torres v. Graham*, 687 F. Supp. 2d 38, 49-50 & 53 (N.D.N.Y. 2009) (finding no evidence that the defendant nurse was aware of the plaintiff's seizure condition and thus no question of fact as to whether the defendant acted with deliberate indifference in failing to issue the plaintiff a bottom bunk order); *Jones v. Smith*, 2015 WL 5750136, at *12 (finding no evidence that the defendants' failure to assign the plaintiff to a bottom bunk was anything more than negligence).

In the present case, viewing the evidence as it must in a summary judgment context in the light most favorable to Plaintiff as the non-moving party, the Court finds that there are questions of fact regarding whether Defendant Nurse Cornall acted with deliberate indifference to Plaintiff's serious medical needs. First, according to Plaintiff, his back condition was well-documented in his medical chart, including the prior issuance of a bottom bunk order, and yet, upon her review of Plaintiff's medical records, Nurse Cornall indicated that he had no such condition. Farrell Decl., Ex. 1. The Court notes that it is unclear what medical records Nurse Cornall reviewed. *See* Cornall Decl. at ¶ 6. In addition, Defendant Nurse Coryer claims that the code associated with Plaintiff's back condition did not require bottom bunk placement under DOCCS Policy No. 1.49.[9] Nonetheless, Plaintiff had previously been issued a bottom bunk order and was promptly removed from the top bunk on this occasion.

Were the matter simply limited to Nurse Cornall's review of medical records, the recommendation of this Court would most likely be different because any such error in the review may constitute, at worst, mere negligence. More important for purposes of the deliberate indifference inquiry is Plaintiff's claim that Nurse Cornall never performed the required physical assessment. Compl. at ¶ 35. Nurse Cornall disputes Plaintiff's claims, although she candidly admits that she does not recall examining Plaintiff. Cornall Decl. at ¶ 5. Whether this physical assessment for suitability in a top bunk was in fact performed, and if so, in what manner, is a significant question of fact that must be left for the jury to determine. If Plaintiff is able to establish at trial that

---

[9] The Court notes that the Screening and Physical Assessment Form and DOCCS Policy No. 1.49 contain slightly different language in referring to back problems that will warrant the issuance of a bottom bunk order. The Screening and Physical Assessment Form refers to "medically documented – back problems (through radiologic or surgical physician review." Farrell Decl., Ex. 1. DOCCS Policy No. 1.49, on the other hand, states that placement in a bottom bunk will only be issued for "[d]ocumented back problems through physician review of history and medical records (e.g. radiologic or surgical) that *significantly limits climbing*." *Id.*, Ex. 5 (emphasis added).

Nurse Cornall was aware of his documented medical history of chronic back conditions, and possibly his prior receipt of a bottom bunk pass, and despite this knowledge refused or failed to perform the physical assessment required to determine if there are "medical indications requiring him to be placed in a bottom bunk bed," and then indicated that there were no medical conditions requiring Plaintiff to be placed in a bottom bunk, a reasonable jury could conclude that the deliberate indifference test has been met. Therefore, questions of fact remain.

With regard to Defendant Nurse Coryer, any claim of supervisory liability would be based upon the second *Colon* category; her alleged failure to reasonably investigate an ongoing constitutional violation and remedy the wrong. Once again viewing the evidence in the most favorable light to Plaintiff, the Court finds questions of fact to be resolved. Nurse Coryer claims that she performed a medical record review; however, there is no indication in the record that she visited Plaintiff or performed any physical assessment, nor does she say that she did. *See* Coryer Decl. Instead, she maintains that she directed Plaintiff, by her March 12 letter, to attend sick call in order to be physically examined to determine whether his back problems required a bottom bunk assignment. Coryer Decl. at ¶ 18. She states that "[i]f the resulting physical exam resulted in a finding that Plaintiff's climbing ability was significantly limited, his top bunk placement could then be revoked." *Id.* However, the March 12 letter does not, in so many words, advise Plaintiff of the possibility of receiving a physical assessment at sick call in order to be reevaluated for a bottom bunk assignment; rather, it summarily directed Plaintiff to "go to sick call to address concerns." Farrell Decl., Ex. 7. Similarly, Nurse Coryer's April 22 letter to Plaintiff definitively states that he did "not meet the criteria for a bottom bunk." *Id.* Viewing this evidence in the light most favorable to Plaintiff, a reasonable fact finder could find that Nurse Coryer, like Defendant Nurse Cornall,

determined, without any physical assessment being done, that Plaintiff was not eligible for bottom bunk placement. Therefore, factual questions exist as to whether Defendant Coryer acted with deliberate indifference in failing to reasonably investigate and respond to Plaintiff's placement in a top bunk.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment on the merits be **DENIED** as to Defendants Nurse Cornall and Nurse Coryer.

### 3. Qualified Immunity

The Court next considers whether Defendants Nurse Cornall and Nurse Coryer are entitled to qualified immunity. The doctrine of qualified immunity shields public officials from suit for conduct undertaken in the course of their duties if it "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether an official protected by qualified immunity may be held liable for an alleged unlawful action turns on the objective legal reasonableness of the action assessed in light of the legal rules that were clearly established at the time the action was taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Lewis v. Cowan*, 165 F.3d 154, 166 (2d Cir. 1999). It was clearly established by 2011, the date of the events alleged in the Complaint, that prison officials may not be deliberately indifferent to an inmate's serious medical needs. *See Rahman v. Schriro*, 22 F. Supp. 3d 305, 316 (S.D.N.Y. 2014) (stating that the "'right to be from deliberate indifference to serious medical needs'. . . was clearly established 'as far back as 1976 by *Estelle v. Gamble*, 429 U.S. 97 (1976))'"). For the same reasons as detailed above, there are significant questions of fact that prevent the Court from determining as a matter of law that it would have been objectively reasonable for Defendants Nurse Cornall and Nurse Coryer to believe that they were not violating

Plaintiff's rights. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment on the grounds of qualified immunity as to Defendants Nurse Cornall and Nurse Coryer be **DENIED**.

### C. Plaintiff's Claims Against Defendant Dr. Lee

The basis of Plaintiff's Eighth Amendment deliberate medical indifference claim against Defendant Dr. Lee is that Dr. Lee "failed to provide any kind of treatment" to Plaintiff for his complaints of left shoulder pain, lower back pain, and a swollen knee. Compl. at ¶ 71. More specifically, Plaintiff states that Dr. Lee did not provide him with adequate pain medication or refer him to a pain specialist. Farrell Decl., Ex. 12, Dep. of Edward Sanchez, dated July 24, 2014 ("Pl's Dep.") at pp. 34-35.

### 1. Legal Standard

As stated above, in order to state an Eighth Amendment claim for denial of medical care, a prisoner must demonstrate (1) a "sufficiently serious" medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin ("Hathaway I")*, 37 F.3d 63, 66 (2d Cir. 1994). A court must consider two inquiries in determining whether a deprivation of care is sufficiently serious. *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Id.* Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id.* The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id.* at 280. In cases where medical treatment is given, but is inadequate, "the seriousness inquiry is narrower." *Salahuddin v. Goord*, 467 F.3d at 280. "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or

interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d at 185).

The second prong is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness. *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66. A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm. *Farmer v. Brennan*, 511 U.S. at 836. This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. at 835). Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d at 702 (quoting *Hathaway v. Coughlin ("Hathaway II")*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

*2. Analysis*

Plaintiff was treated by Defendant Dr. Lee for chronic pain in his left shoulder and lower back and swelling in his right knee. Contrary to Plaintiff's claim that Dr. Lee "failed to provide any kind of treatment," Dr. Lee both evaluated and provided treatment for Plaintiff's conditions. At the objective prong, Plaintiff has not shown that the treatment provided was inadequate or that any inadequacy was "sufficiently serious." At his first examination, on February 29, 2012, Dr. Lee

reviewed x-rays of Plaintiff's lower back and examined Plaintiff's left shoulder. Lee Decl. at ¶ 6; Pl.'s AHR at p. 34. Based on his examination, Dr. Lee determined that it was appropriate to treat Plaintiff's pain symptoms with Neurontin and Naprosyn, which Plaintiff was provided with throughout the relevant period. *See, e.g.*, Pl.'s AHR at pp. 34, 37-39, 41, 47, & 50. Dr. Lee also referred Plaintiff to physical therapy to treat his left shoulder. Lee Decl. at ¶ 9. Plaintiff was noted to tolerate the physical therapy well, but he elected to discontinue it in early May 2012. Lee Decl. at ¶ 11; Farrell Decl., Ex. 11. Based on Plaintiff's complaints of right knee swelling and pain, Dr. Lee ordered x-rays, which did not reveal any acute condition. Lee Decl. at ¶ 7; Farrell Decl., Ex. 10. Plaintiff was provided with a knee brace. Lee Decl. at ¶ 7. Plaintiff was also noted to be "fully ambulatory" at each appointment with Dr. Lee. Pl.'s AHR at pp. 34, 39, 40, 45, & 47. Thus, the record before the Court demonstrates that Dr. Lee reasonably responded to each of Plaintiff's complaints. Nor is there anything that indicates to the Court that the care Plaintiff claims he was deprived of—stronger pain medication and referral to a pain specialist—was "sufficiently serious."

Moreover, at the subjective prong, it is well-established that "mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d at 703. Plaintiff's claims are no more than disagreements with Dr. Lee's medical judgments. First, with respect to Plaintiff's claim that Dr. Lee prescribed ineffective pain medication, "disagreements over medications . . . implicate medical judgments and not the Eighth Amendment." *Wright v. Genovese*, 694 F. Supp. 2d at 155 (citing *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)). The decision not to prescribe stronger pain medication does not evidence deliberate indifference. *Vail v. Lashway*, 2014 WL 4626490, at *14 (N.D.N.Y. Sept. 15, 2014) ("[T]he decision to choose one form of pain medication over another . . . is not indicative of

deliberate indifference."). Additionally, "concern about prescribing narcotic pain medication, on which inmates . . . could become dependent, may inform a medical judgment about what drugs to prescribe." *Wright v. Genovese*, 694 F. Supp. 2d at 160. In this case, Dr. Lee's decision to treat Plaintiff's pain symptoms with non-steroidal anti-inflammatory drugs rather than narotics was informed by Plaintiff's history of heroin abuse. Lee Decl. at ¶ 17. Second, as to Plaintiff's claim that Dr. Lee should have referred him to a pain specialist, "disagreements over . . . the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim." *Sonds v. St. Baranabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d at 312. Here, Dr. Lee determined that referral to a pain specialist was not indicated due to his review of Plaintiff's x-rays, Plaintiff's refusal to attend physical therapy despite positive results, and that Plaintiff was observed to ambulate without difficulty. Lee Decl. at ¶ 18.

Finally, the Court can summarily deal with the Plaintiff's allegation that Dr. Lee was "dismissive and rude." Compl. at ¶ 71. Such allegations regarding the bedside manor of medical staff do not amount to a constitutional violation. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) ("Insulting or disrespectful comments directed at an inmate generally do not rise to th[e] level"of a constitutional violation.); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) (finding that the plaintiff's allegation that nurse "yelled" at him did not state a claim as "yelling, cursing, or even race-baiting does not violate any constitutionally protected rights").

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **GRANTED** as to Plaintiff's deliberate medical indifference claims against Defendant Dr. Lee.

### D. Plaintiff's Claims Against Defendant Dr. Koenigsmann

Defendant Dr. Koenigsmann is the Deputy Commissioner and Chief Medical Officer of

DOCCS. Dkt. No. 40-11, Carl Koenigsmann Decl., dated Sept. 15, 2014, at ¶ 2. With respect to Defendant Dr. Koenigsmann, Plaintiff's sole non-conclusory allegation is that Dr. Koenigsmann failed to implement quality improvement programs that would correct deficiencies in the training and review of DOCCS medical staff performance. *See* Compl. at ¶¶ 141 & 144. However, there is no evidence that Plaintiff's specific claims are among the issues that DOCCS' quality improvement programs address. Koenigsmann Decl. at ¶¶ 14-16. Furthermore, Plaintiff has not offered any evidence to conclude that Dr. Koenigsmann was aware of the alleged constitutional deprivations. Plaintiff's other conclusory allegations against Dr. Koenigsmann—that he allowed unconstitutional policies and customs, failed to adequately supervise subordinates, and was grossly negligent—are insufficient to establish his personal involvement. *See* Compl. at ¶¶ 138-39, 143, & 145. Accordingly, the Court recommends that Defendants' Motion for Summary Judgment be **GRANTED** as to Defendant Dr. Koenigsmann and that this Defendant be **DISMISSED** from this action.[10]

### E. Plaintiff's Claims for Declaratory and Injunctive Relief

In addition to his request for damages, Plaintiff also seeks declaratory and injunctive relief. *See* Compl. However, since the commencement of this action, Plaintiff has been released from DOCCS custody and now resides in Brooklyn, N.Y. Dkt. No. 51. "In order for a federal court to retain jurisdiction over a case, an actual controversy must 'exist at all stages of review, not merely at the time the complaint is filed.'" *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). "A case is moot when 'it can be said with assurance

---

[10] Because the Court finds that Defendant Dr. Koenigsmann was not personally involved in the alleged constitutional violations, it does not reach Defendants' arguments that Plaintiff's claims against Dr. Koenigsmann should be dismissed for failure to exhaust or on the ground of qualified immunity.

that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Davis v. New York*, 316 F.3d 93, 99 (2d Cir. 2002) (citation omitted). "Where a prisoner has been *released* from prison, his claims for injunctive relief based on the conditions of his incarceration must be dismissed as moot." *Pugh v. Goord*, 571 F. Supp. 2d 477, 489 (S.D.N.Y. 2008). Plaintiff's claims for declaratory and injunctive relief are therefore moot. Plaintiff agrees and has consented to the dismissal of his claims for declaratory and injunctive relief. Resp. at p. 11. Accordingly, the Court recommends that all claims for such relief be **DISMISSED**. Because the Court recommends that Plaintiff's claims for declaratory and injunctive relief be dismissed, the Court also recommends that any claims asserted by Plaintiff against Defendants in their official capacity be **DISMISSED** pursuant to the Eleventh Amendment. *See Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. 525, 539 (N.D.N.Y. 1995) ("To the extent a state official is sued for damages in his or her official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state.").

### F.  Plaintiff's State Law Claims

In addition to his claims brought pursuant to 42 U.S.C. § 1983, Plaintiff also asserts state law claims for negligence and medical malpractice. Compl. at ¶ 145. Defendants contend that this claim is barred by N.Y. Corrections Law § 24, which states:

> 1.  No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

> 2.  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties of any

officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.
N.Y. CORRECT. Law § 24.

The Second Circuit has held that "the immunity from suit in state court provided to DOCS employees by § 24 extends to suits for tort claims based on state law against DOCS employees in federal court." *Brown v. Dep't of Corr. Servs.*, 2011 WL 2182775, at *9 (W.D.N.Y. June 2, 2011) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir.1996)). Here, Plaintiff has alleged acts that clearly would fall within the scope of employment of the state prison officials. Thus, Plaintiff is barred from bringing state law claims against the Defendants in their individual capacities in federal court. *See Baker v. Coughlin*, 77 F.3d at 15-16. As a result, the Court recommends **DISMISSING** Plaintiff's state law claims.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 40) be **DENIED** as to Plaintiff's Eighth Amendment claims against Defendants Nurse Cornall and Nurse Coryer and **GRANTED** in all other respects and with all other Defendants being **DISMISSED** from this action; and it is further

**RECOMMENDED**, that if the above recommendation is accepted, that this case be deemed trial ready on the claims that survive, namely, Plaintiff's Eighth Amendment claims against Defendants Nurse Cornall and Nurse Coryer; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL**

**PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Date:  September 12, 2016
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge